**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | NO. 2:06-CR-60 |
| MICHAEL ORSBURN, ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on the Motion for New Trial and Supplemental Motion for Acquittal, filed by Defendant, Michael Orsburn, on March 22, 2007.  For the reasons set forth below, this motion is **DENIED**.

BACKGROUND

On September 7, 2006, Defendant, Michael Orsburn, and his wife, Teresa Orsburn, were charged in a nineteen count superseding indictment.  At times material to the superseding indictment, Mr. Orsburn was the elected Keener Township Trustee, which is the chief financial officer of the township and he appointed Ms. Orsburn as Keener Township Deputy Trustee.  Counts 1-15 charged Defendants with mail fraud, in violation of Title 18 U.S.C. sections 1341 and 1346.  The Government alleged Defendants devised and knowingly participated in a scheme and artifice to defraud Keener Township

and its citizens of money, property, and the intangible right of the honest services, and in furtherance thereof caused the United States mails to be used.  More simply, the Government alleged that Defendants' wrote checks payable to themselves out of the Keener Township Trustee checking account at the Demotte State Bank.  Each of the 15 counts consisted of separate allegations involving fifteen separate checks misappropriated from the Keener Township Trustee account.  Counts 16-19 alleged Defendants intentionally underreported their income on their United States Individual Tax Returns for the years of 2001, 2002, 2003 and 2004, all in violation of Title 26 U.S.C. section 7206(1).

Mrs. Orsburn pled guilty to each of the each of the charges contained in the superseding indictment.  Mr. Orsburn pled not guilty and proceeded to trial.  At trial, Mrs. Orsburn testified that, beginning in 2000, she began to misappropriate funds from the Keener Township Trustee account.  (Tr. Vol. III, p. 17).  She did this by issuing checks out of the Keener Township Trustee account payable to either herself or Michael Orsburn.  (Tr. Vol. III, p. 18).  Mrs. Orsburn wrote the payee's name in erasable ink.  (Tr. Vol. III, p. 18).  She would then take these checks into the Demotte State Bank and generally deposit the amounts into Mr. Orsburn's personal checking account.  (Tr. Vol. III, p. 20).

Mr. Orsburn was the only authorized signatory on their personal checking account because he did not want his wife's name of the account.  (Tr. Vol. III, p. 22).  Thus, while Mrs. Orsburn

was responsible for making out the bills and the checks to pay those bills, Mr. Orsburn signed all of the checks. (Tr. Vol. III, p. 22). Mr. and Mrs. Orsburn did not discuss financial issues involving the personal checking account and Mr. Orsburn never looked at the checking account statements. (Tr. Vol. III, p. 23). As such, Mrs. Orsburn stated that Defendant was not aware of her scheme. (Tr. Vol. III, p. 21).

When the bank would return the checks to the Keener Township Trustee's Office, Mrs. Orsburn would erase the payee's name on the front of the check (either herself or Mr. Orsburn) and replace it with a vendor's name so that it would appear as a legitimate expense of the Keener Township Trustee's Office. (Tr. Vol. III, p. 19, 20). Then, Mrs. Orsburn would cut off the endorsement to hide the endorser's signature, which was usually her signature. (Tr. Vol. III, p. 21). Mrs. Orsburn admitted that she needed to get these checks back from the Demotte State Bank so that she could conceal or dispose of them. (Tr. Vol. III, p. 49-50). In total, $308,000 was misappropriated during this scheme. (Tr. Vol. III, p. 103).

Eventually, Mrs. Orsburn quit using the erasable ink, figuring that no one would look at the returned checks. (Tr. Vol. III, p. 37). However, in 2004, the Keener Township Advisory Board began asking for bank statements and records to conduct an audit, which the Orsburns refused to provide. (Tr. Vol. III, p. 57; Tr. Vol. I, pp. 22-23). In March 2005, Robert Bryan, one of the Advisory Board

members, found some boxes of Township records at the Keener Township Fire Department. (Tr. Vol. I, p. 37). After examining the contents, he found some returned checks dated 2003 and some dated 2005 that appeared suspicious, including some written directly to Theresa Orsburn out of the Keener Township Trustee account. (Tr. Vol. I, p. 37-38). This finding ultimately led to the prosecution of both Defendants.

Defendant testified at trial. He stated that he was not aware that his wife was stealing money from the Township Trustee's Office. (Tr. Vol. III, p. 104). His wife ran the Keener Township Trustee's finances, which was more "than a half-a-million dollar a year operation." (Tr. Vol. III, pp. 113, 120). In that capacity, she signed checks out of the Keener Township Trustee's account on her own without his knowledge. (Tr. Vol. III, p. 113). Mr. Orsburn was also unaware that from 2000 through 2004 $308,000 from the Keener Township Trustee account went into his personal checking account. (Tr. Vol. III, p. 103). In 2004 Mr. Orsburn's legitimate income was $62,000, but the total income that went through his checking account, including the misappropriated funds from Keener Township, was $175,000. (Tr. Vol. III, p. 119). Admittedly, he was present when many expenditures were made out of his checking account. (Tr. Vol. III, p. 115, 119). Nevertheless, because he did not pay close attention to the expenditures or look at his checking account statements, Mr. Orsburn was unaware that anything was wrong. (Tr. Vol. III, p. 103, 119).

Laura Chambers, senior vice president of Demotte State Bank, also testified at trial. (Tr. Vol. II, pp. 4-69). She explained that when checks are deposited at the bank, they go through a sorter. (Tr. Vol. II, p. 5). This sorter has a built-in camera that takes a digital image of the front and back of the check. (Tr. Vol. II, p. 5). These images are saved on an optical platter and kept by the bank for seven years. (Tr. Vol. II, p. 5, 8). At the end of each month, the bank returns to each customer the original or an image of each check that went through the account holder's account as well as a bank statement. (Tr. Vol. II, pp. 8-9). If an original check is not returned to the customer, it is shredded ninety days after the image is made. (Tr. Vol. II, p. 8).

Until 2001, the bank's procedure was to return original checks to governmental entities, such as the Keener Township Trustee's Office. (Tr. Vol. II, p. 49). This was because the State Board of Accounts required the Demotte State Bank to do so. (Tr. Vol. II, p. 59). However, in 2001, the State Board of Accounts declared that an image from the sorter's built-in camera was adequate proof of payment and, therefore, no longer required banks to return the actual checks to governmental entities. (Tr. Vol. II, pp. 49-50, 59). At that point, unless a governmental entity requested the original checks be returned, they would only receive the copied images. (Tr. Vol. II, p. 50). Governmental entities could continue to receive the original checks back instead of the digital images if they verbally requested such. (Tr. Vol. II, p. 60).

Although Mrs. Chambers was unaware whether the Keener Township Trustee's Office had any such agreement, (Tr. Vol. II, p. 61), she did know that Demotte State Bank was mailing the original checks back to the Keener Township Trustee's Office. (Tr. Vol. II, p. 57; 68-69).

Demotte State Bank's standard procedure for returning canceled checks and bank statement is through the United States mail. (Tr. Vol. II, p. 38). Sometimes, though, customers request to pick up their bank statements instead of having them mailed. (Tr. Vol. II, p. 38). When such a request takes place, the bank will denote this on the statement by writing "hold" next to the address window, and the bank will hold the statement until the account holder comes in and picks up the statement. (Tr. Vol. II, p. 38).

After a three day jury trial, the jury convicted Mr. Orsburn on each of the nineteen counts. He has filed the instant motion claiming that the Government failed to introduce sufficient evidence to establish all of the essential elements of the mail fraud counts. Specifically, Mr. Orsburn makes two arguments. First, Mr. Orsburn argues that the Government failed to introduce sufficient evidence to establish that he had knowledge of the scheme or that the scheme to defraud included the use of the United States mail. Second, he argues that the Government failed to introduce sufficient evidence to establish that the mailings set forth in Counts 1-15 were in furtherance of the alleged mail fraud scheme.

DISCUSSION

Motion for New Trial Standard

Rule 33 of the Federal Rules of Criminal Procedure allows for a new trial where it is required by the interests of justice. The Court may order a new trial only where the verdict is against the manifest weight of the evidence, and a guilty verdict would result in a miscarriage of justice. *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999). Such motions are disfavored, and properly granted only in the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th 1998).

Motion for Acquittal Standard

Under Federal Rules of Criminal Procedure 29(c), a defendant who has been found guilty by a jury may move for an acquittal. If the defendant is challenging the sufficiency of the evidence presented at trial, the court must "consider the evidence in the light most favorable to the prosecution, drawing all reasonable inferences in the government's favor," and a "[r]eversal is appropriate only when, after viewing the evidence in such a manner, no rational jury could have found the defendant to have committed the essential elements of the crime." *United States v. Macari*, 453 F.3d 926, 936 (7th Cir. 2006)(quotation omitted); *United States v. Pree*, 408 F.3d 855, 865 (7th Cir. 2005).

Mail Fraud

In order to show a violation of mail fraud, the Government must prove three elements beyond a reasonable doubt: (1) Defendant's participation in a scheme to defraud; (2) the intent to defraud, while; (3) using the United States mails to further that scheme.  *United States v. Walker*, 9 F.3d 1245, 1249 (7th Cir. 1993).  Again, Defendant requests relief from his convictions of Counts 1-15 on two grounds.  First, Defendant argues that the Government failed to show that he had any knowledge of the scheme or that he could reasonably foresee the United States mail would be utilized in furtherance of the scheme.  And, second, Defendant claims the United States mails did not further the scheme.

Jury Could Infer Defendant's Knowledge of the Scheme

While Defendant concedes that the evidence at trial could lead to the inference that he was receiving funds in excess of his normal rate of income, he claims that no evidence was introduced that could establish that he knew of Mrs. Orsburn's scheme or that he had knowledge that the mail was be utilized to further that scheme.  Respectfully, this Court disagrees.

It is true that there was no direct admission at trial linking Defendant with the scheme to defraud.  Mrs. Orsburn testified that her husband was unaware of the scheme, and Defendant testified to that effect as well.  Nevertheless, this supposed lack of knowledge does not require a reversal when "there are facts and evidence that

support an inference of deliberate ignorance." *United States v. Walker*, 25 F.3d 540, 546 (7th Cir. 1994).  Instead it is a defense that makes it appropriate for a court to give the jury what is commonly referred to as an ostrich instruction. *United States v. Mabrook*, 301 F.3d 503, 508 (7th Cir. 2002). Essentially, the ostrich instruction informs the jury that "a person who smells a rat and then avoids actual knowledge may already know enough for the purpose of the law." *United States v. Schwartz*, 787 F.2d 257, 265 (7th Cir. 1986).

There are facts and evidence in this case that made it appropriate for the Court to give the jury an ostrich instruction. (See DE #64, Instruction #26).  Defendant admitted giving his wife complete control over the Keener Township Bank account held at the Demotte State Bank, without any oversight whatsoever. After this, it is undisputed that hundreds of thousands of dollars misappropriated from the Keener Township Trustee's Office went through Defendant's checking account, where he was the sole signatory.  It is also undisputed that Defendant was present when many expenditures were made out of his checking account.  In fact, there is evidence that he signed all of the checks out of that checking account.  Nevertheless, Defendant maintained that he was unaware of any of the misappropriated funds because he never reviewed either the bank statements from his own personal account or those from the Keener Township Trustee's account.  Despite his claimed unawareness, there were facts and evidence that supported

an inference of deliberate ignorance. With all of these connections, a jury could reasonably find that he was involved in the scheme along with his wife. Thus, even though Defendant portrayed himself as naive, the jury was entitled to take a different view. See *Schwartz*, 787 F.2d 257; *United States v. Ramsey*, 785 F.2d 184 (7th Cir. 1986).

<u>United States Mail Furthered The Scheme</u>

Defendant makes numerous arguments as to why the United States mail did not further the scheme to defraud Keener Township. Each of these will be addressed in turn.

First, Defendant claims that the mailing of the checks cannot be considered furthering the scheme because the mailing is ultimately what disclosed the nature of the fraud. "[C]ourts must consider the full scope of the scheme when determining the sufficiency of the mailing element." *United States v. Ashman*, 979 F.2d 469, 482 (7th Cir. 1992). Thus, just because the returned checks were found and ultimately led to Defendant's convictions does not necessarily preclude the mailed checks from supporting the mail fraud convictions. *Schmuck v. United States*, 489 U.S. 705, 715 (1989)("The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time, regardless of whether the mail later, through hindsight, may prove to have been counterproductive and return to haunt the perpetrator of the fraud."). Mrs. Orsburn

admitted that she needed to receive the checks back to conceal the fraudulent scheme. This is enough to establish that the use of the mails furthered the scheme. *United States v. Lack*, 129 F.3d 403, 408 (7th Cir. 1997)(noting that mailings that occur "after Defendant has obtained the victims' money are in furtherance of the scheme if they facilitate concealment or postpone investigation of the scheme.")

Second, Defendant claims that the checks that formed the basis for Counts 1-10 "pre dated [the Advisory Board's 2004 request to review the Keener Township Trustee's financial records] and as a result the fact that they were mailed rather than picked up by the Trustee was merely incidental to the case and was not part of any fraud scheme." (Def. Mot., p. 6). Therefore, Defendant argues, "[i]t was not essential for the scheme that the checks in question be sent through the mail." (Def. Mot., p. 6). Contrary to Defendant's position, the mailing does not have to be an essential part of the scheme. *United States v. Keane*, 522 F.2d 534, 551 (7th Cir. 1975). It is enough if the mailing is incident to an essential part of the scheme. *Schmuck*, 489 U.S. at 710-11; *United States v. Lennartz*, 948 F.2d 363, 370 (7th Cir. 1991). Here, the mailing was surely incident to concealing the fraud, and Mrs. Orsburn admitted that such concealment was essential to the scheme.

Third, Defendant claims that, with regard to the checks involved in Counts 11-15, there is insufficient evidence establishing that the original checks were mailed back to the

Keener Township Trustee's Office by the Demotte State Bank. However, exhibits 11-15, inclusive, along with Ms. Chambers and Mrs. Orsburn's testimony, permitted a reasonable juror to find beyond a reasonable doubt that the original checks were mailed back to the Keener Township Trustee's Office. Moreover, though, the depositing of these checks caused the Demotte State Bank to mail bank statements to the Keener Township Trustee's Office. As such, this argument cannot carry the day.

Fourth, with respect to Counts 11-15, Defendant points out that Teresa Orsburn did not attempt to alter the identity of the payee when the checks were received by the Keener Township Trustee's Office from Demotte State Bank.[1] Because of this, Defendant claims, the mailing of the checks at issue in Counts 11-15 had nothing to do with the scheme. Although Mrs. Orsburn did not attempt to alter the identify of the payee on those checks, the scheme was still furthered by the mailing. Mrs. Orsburn admitted that it was essential to receive the checks back in order to conceal or dispose of them. Even if she did not alter the identity of the payee, she still needed to get the checks back in order to otherwise conceal or dispose of them. Thus, having the checks mailed back, even if they were not altered, was still incidental to

---

[1] Notably, Defendant's prior argument is that the original checks were never mailed back to the Keener Township Trustee's Office. Now, Defendant claims that Teresa Orsburn did not attempt to alter the check when she received it back from the Demotte State Bank. While one can argue in the alternative, these two arguments surely can not logically co-exist.

an essential part of the scheme.  *Lack*, 129 F.3d at 408.

Fifth, Defendant argues that the use of the mails was not an essential to the scheme because all of the checks could have been picked up instead of having them mailed.  As pointed out above, though, "it is not necessary that a scheme contemplate the use of the mails as an essential element."  *Keane*, 522 F.2d at 551.  It is only "necessary that the alleged mailing be 'for the purpose of executing the scheme, as the statute requires.'"  *Id.*   Thus, "[e]ach mailing that forms a basis for a count must be in furtherance of executing the fraudulent scheme."  *Id.*  Because each mailing was in furtherance of executing and concealing the scheme, that is sufficient to satisfy this element.

CONCLUSION

For the reasons set forth above, Defendant's motion is **DENIED**.


**DATED:  April 17, 2007**            **/s/RUDY LOZANO, Judge**
                                      **United States District Court**